In the Matter of the Last Will and Testament of Boyer Boyeus.

4. PLEADING: construction of.

Reversed.

IN THE MATTER OF THE LAST WILL AND TESTAMENT ,OF BOYER BOYEUS.

Will: WITNESSES MUST SUBSCRIBE. Under our law it is necessary to the validity of a will bequeathing property exceeding in value three hundred dollars, that two witnesses should *subscribe* the same; and it is not sufficient unless thus subscribed, though the witnesses were present and can testify that it was signed by the testator.

*Appeal from Scott District Court.*

WEDNESDAY, DECEMBER 11.

THIS will, when offered for probate, was attested by but one witness. The County Court, for this reason, held that it was not executed as required by law, and

refused to allow it to be admitted to probate. . In the District· Court, on appeal, the same order was made, and the legatees appeal to this court.

*J. B. Leake* for the appellants.

*H. R. & E. Claussen* for the appellee.

WRIGHT, J. — The provisions of the statute, which, it is conceded, must receive a construction in this case, are as follows :

WILL : witnesses must subscribe.

" SEC. 2311. Personal property of the value of three hundred dollars may be bequeathed by a verbal will, if *witnessed* by two competent witnesses."

" SEC. 2313. All other wills, to be valid, must be in writing, *witnessed* by two competent witnesses, and signed by the testator, or by some person in his presence, and by his express direction."

This will bequeathed personal property of the value of one thousand dollars, and it is not, therefore, valid under the first section above quoted. But, on the trial, the legatees proposed to prove its execution by three witnesses, but one of them having subscribed to the same. To this the contestants objected, and insisted, that it could not be admitted to probate, because there was but one subscribing witness. Appellants claimed, and now insist, that, under our law, it is not necessary to the validity of such a will, that two witnesses should subscribe the same, but that it is sufficient if they were present and can testify that it was signed by the testator, or some person for him, in his presence, and by his express direction. And this is the very question presented for our determination.

The argument is, that the statute does not require the witnesses to *subscribe* the will as attesting witnesses, but that it shall be *witnessed* by two competent witnesses,

and that the language and meaning of the enactment is fully met by the production of testimony as attempted in this case.

For very many reasons, and, to our minds, most conclusive, the argument does not strike us favorably.

In the first place, as far as we have examined, the rule is almost universal in all the States, and throughout the civilized world, that the witnesses shall subscribe the will or testament. The exception is found in Pennsylvania, where the will must be *proved* by the oath of two witnesses, but the *attestation* by signatures is not required. Purdon's Digest, § 6, p. 1016. And in that State, they go almost to the length of the English cases, before the statute of frauds, which held any scrap of paper writing, though neither signed, sealed nor written by the testator, to be valid, if established by one or more witnesses — the Pennsylvania statute requiring two witnesses, while that of 32 Henry VIII required but one. Another exception in some of the States relates to a holographic instrument, or one written wholly by the testator, as in Virginia, Kentucky, Arkansas, and some other States. In such cases, subscribing witnesses are dispensed with, but the handwriting of the testator must be proved by two, and in some cases, three witnesses. 3 Greenleaf's Cruise, 43, 44, 49.

But aside from such exceptional cases, the rule is universal, since the statute of frauds, to require the witnesses to attest by their signatures. And without the most cogent reasons, we will not believe that the legislature intended, by our statute, to introduce a new and most dangerous rule on this subject. See further, 3 Cruise, 45; Statute, 7 W. 4; 1 Vict. ch. 26, §§ 9, 11, 12, 29; Stat. of Frauds, ch. 2; 2 Greenl. Ev. 666; 2 Bouv. Inst. 448; 1 Redf. on Wills, 165, 228, *et seq.; Adams* v. *Norris*, 23 How. 353.

Then again, the language of the act is far from being inconsistent with this construction. What does the word "witnessed" mean in this connection? To determine this we must bear in mind the entire language, the almost uniform legislation on this subject, and the solemn nature of the instrument thus to be witnessed. The section on the subject of *verbal* wills (2311) could, of course, only intend that the will of the testator should be established by two competent witnesses present at the time of the declaration. For, as there was no writing, there was nothing to subscribe. But the section under consideration (2313) relates to written wills, and to their attestation. And now what would any fair mind, reasonably, naturally and even necessarily understand by the words, "must be in writing, witnessed by two competent witnesses"? To say that a writing is witnessed includes, as it seems to us, almost necessarily, the idea that it is witnessed in writing, and to exclude the conclusion that it is witnessed in any other manner.

The witnessing is a part of the writing. And it is not correct nor usual, in either a statute or ordinary conversation, to speak of witnessing a written instrument otherwise than by subscribing the names of the witnesses. And this is sustained by the thought that the witnesses to a will become such from the time they thus sign it. They testify from that moment, and hence, though they should die before the testator or before the probate of the will, it is still good. And they are required to thus testify, not merely to perceive or know what is going on. In other words they attest not merely by their eyes and ears, but testify by the act of making their signatures, that they thus identify the instrument.

Not only so, but these witnesses are usually persons selected by the testator, or by the scriviner for him, to prevent the perpetration of fraud, and, if need be, to

judge of his capacity. And yet, if appellant's construction be correct, the door to the most stupenduous frauds would be thrown open, by language which certainly does not fairly warrant it. By the names of the witnesses an additional, most material, most essential safeguard is thrown around these instruments. But, on the other hand, if, without any thing more than mere memory to identify the instrument, disregarding the consideration that the testator deliberately and formally made his will, desiring and wishing particular persons to attest it in writing, these most solemn of all writings may be established by the recollection of witnesses months and years afterward, immeasurable would be the temptations to frauds and perjuries. Without a statute clearly requiring such a construction, we should be most reluctant to so hold. And we remark in this connection that the change from the language of the statute of 1843, in force when the statute under consideration was adopted, and which required that the will should be "attested and subscribed by two or more competent witnesses," does not strike us as entitled to the force claimed. The most cursory examination of the Code of 1851 (and our present law on the estates of decedents, ch. 100, is taken from that), will show that the codifiers seemed studiously to avoid surplusage, and to content themselves in giving, in as few words as possible, the rule to govern in the particular case. And this is in no instance more conclusively shown than by a comparison of the two chapters, in all their parts, upon this general subject. This may be readily seen by comparing sections 1, 2, 4, 5, 6, 7, 9, chapter 1, of the act of 1843, with sections 2309, 2311–2314, 2320 of the Revision. And yet in their substance they are not essentially different. We cannot stop to demonstrate this proposition, but the most hurried examination will show its truth.

But a further, and to our minds, more conclusive argument is this: By section 2314, it is declared that no subscribing witness to a will can derive any benefit therefrom, unless there be two disinterested and competent witnesses to the same. Now this language is worse than meaningless if appellants' position is correct.

For by it the subscribing witnesses would be excluded, whereas the one who depends alone upon his memory, who attests alone by his eyes and ears, could establish it in part at least, though he took the entire estate. And, indeed, why might he not establish it alone? For it is not necessary that both of the witnesses shall testify at the time of proving the same, if two witnessed it when it was made. Therefore it might occur that the witness who fortunately did not subscribe the instrument, might by his testimony prove the execution — testifying that another was present, now dead or beyond the reach of process, though by its terms he took the entire estate. Can any one believe that it was ever intended to thus discriminate in favor of the non-subscribing witness, and that, in the face of the reason and policy of the statute, and the uniform practice and legislation of almost every State and nation? We are all agreed that the judgment below was right, and it is therefore

Affirmed.